**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**PAUL D. CLAY,** *et al.,*

    **Plaintiffs,**

**v.**

**GARY FREED,** *et al.,*

    **Defendants.**

**Case No. 2:11-CV-0812**

**JUDGE PETER C. ECONOMUS
Magistrate Judge Norah M. King**

**OPINION AND ORDER**

This matter is before the Court for consideration of two motions: Defendants Gary Freed and the Village of Syracuse, Ohio's motion for summary judgment (doc. # 27); and Defendants William Gilkey, Andy Myers, Sheriff of Meigs County, and County of Meigs' motion for summary judgment (doc. # 29). Both motions seek judgment as to all claims set forth in Plaintiffs' Complaint. (Doc. # 2.) Because there is no genuine issue of any material fact regarding any of Plaintiffs' claims, Defendants' motions are granted.

**I.     BACKGROUND**

On August 25, 2010, Plaintiff Paul Clay started a fire on his property located in the Village of Syracuse, Ohio. Smoke from the fire was visible across the street where Syracuse Police Chief, Gary Freed, was standing with another village employee. Chief Freed walked over to the property and approached Clay. According to Clay, he met Chief Freed approximately 30 feet away from the fire. (Clay Dep., page 32.) Chief Freed told Clay that it was against the law to conduct an open burn without a permit, but Clay continued to add trash to the fire. (*Id.*, page 29.) The two men dispute whether Chief Freed ask Clay for identification: the chief says he did, Clay says he did not. Chief Freed then left the property, but returned a short time later in his

police cruiser. (*Id.*, page 41.) At this time, Chief Freed was joined by Meigs County Deputy Myers and Sergeant Gilkey, who had responded to Chief Freed's call for back-up support. (Doc. # 29, page 5, citing to Freed Affidavit, Exh. A, Freed Police Report, ¶ 2.) The parties agree that Clay was visibly angry, particularly with Chief Fried, and that he was not compliant with the officers' requests to calm down. (Clay Dep., page 29, 31, 43, 44.) Ultimately, Sergeant Gilkey informed Clay that he was under arrest for disorderly conduct. In response, Clay walked away from the officers and toward his trailer, ignoring several commands to stop. (*Id.* at pages 45, 46 49.) Chief Freed deployed his TASER device, hitting Clay in his stomach area. Clay removed the probes from his coat, and he was tasered again. He fell to the ground, whereupon all the officers were eventually able to handcuff Clay with the use of a baton. Ultimately, Clay was charged with disorderly conduct and resisting arrest, and he was issued a citation for open burning. He was transported to the Southeast Regional Jail in Nelsonville, Ohio, and held overnight. (Doc. # 27, page 6; doc. # 31, page 3.)

In the underlying criminal action, Clay (as a criminal defendant) filed a motion to suppress in the Meigs County Court. After a hearing, in which Freed, Gilkey, and Myers testified, the court held as follows: "The arrest made by the officers involved was without constitutional or statutory authority as the alleged criminal charge is a minor misdemeanor which does not permit arrest of the defendant." (Doc. # 31-1, Judgment Entry.) As a result, the criminal charges were dismissed.

Plaintiffs Paul Clay and Dora Clay[1] bring four causes of action against Defendants Chief Freed; Village of Syracuse; Sergeant Gilkey; Deputy Myers; County of Meigs; and Sheriff of Meigs County: (1) "excessive force . . . in violation[ ] of the Plaintiff's rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution, and 42 U.S.C. Section 1981, 1983, and 1985"; (2) "false arrest . . . in violation of [Plaintiff's] rights as secured under the Fourth and Fourteenth Amendments [to] the United States Constitution and Article I, Section 10, of the Ohio Constitution, and 42 U.S.C. Section 1981, 1983 and 1985"; (3) "false imprisonment . . . in violation of his rights as secured under the Fourth, Fourteenth Amendments of the United States Constitution and Article I, Section 10, of the Ohio Constitution and 42 U.S.C. Section 1981, 1983 and 1985"; and (4) Plaintiff's now-deceased wife's claim for loss of consortium.  Plaintiffs also alleges, in his fifth cause of action, that both the Village of Syracuse and Meigs County demonstrated "deliberate indifference to the constitutional rights of its [sic] citizens and were the cause of the violations of Plaintiff's constitutional rights as alleged herein."  Plaintiffs filed the action in state court, but Defendants removed it to this court based on Plaintiff's federal claims.

## II.    STANDARD OF REVIEW

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Civ. P. 56(c)(1).  The party moving for summary judgment bears the burden of showing conclusively that no genuine issue

[1] According to the record, Plaintiff Dora Clay died in August, 2012.

of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Matsushita*, 475 U.S. at 586.

## III.    LAW AND ANALYSIS

As a threshold matter, this Court notes that based on Plaintiff Clay's response to Defendants' motions for summary judgment, he is not pursuing many of the claims alleged in the Complaint.  In his response, which provides only the barest recitation of facts, Clay states that the state court granted his motion to suppress and noted in its ruling: "The arrest was made without constitutional authority as the alleged criminal charge was a minor misdemeanor which does not permit the arrest of the defendant, and . . . [a] full custodial arrest for a minor misdemeanor violates Section 14, Article I, of the Ohio Constitution."  (Response, doc. # 31, page 3.)   As this is the only statement in the response that can be construed as relating specifically to Clay's claims, this Court infers that he concedes all of his claims except for his claims for false arrest and false imprisonment.  *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal

quotation marks omitted). Further, he does not address Defendants' arguments regarding excessive force, loss of consortium, failure to train, the Fifth and Fourteenth Amendments, 42 U.S.C. §§ 1981 and 1985, or proper party defendants. Therefore, those claims and parties are dismissed. This Court will focus exclusively on Clay's 42 U.S.C. § 1983 claims of false arrest and false imprisonment against Defendants Freed, Gilkey, and Myers, as properly analyzed under the Fourth Amendment.

In order to prevail on a civil rights claim under 42 U.S.C. § 1983, a plaintiff "must establish that a person acting under color of state law deprived him of a right secured by the Constitution of laws of the United States." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (citation omitted). Here, no one disputes that Defendants Freed, Gilkey, and Myers (hereinafter referred to as "Defendant Officers") were acting under color of state law. The issue, then, is whether Defendant Officers deprived Clay of any rights under the United States Constitution.

To succeed on his false arrest claim, Clay must prove the police lacked probable cause when they arrested him. *Fridley v. Horrighs*, 291 F.3d 867 (6th Cir. 2002). For probable cause to exist, the "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (citation omitted); *see also Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983) (noting that the establishment of probable cause requires only the probability of criminal action, not an actual showing of such activity). The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of the arrest." *Crockett*, 316 F.3d at 580 (quotation marks omitted).

In their motions for summary judgment, Defendant Officers assert that their arrest of Clay was proper. First, they assert that because Chief Freed observed Clay's adding garbage to the open fire, he was in clear violation of Ohio Revised Code § 3734.01. Although that offense is a minor misdemeanor for which a citation is to be issued, Chief Freed had the authority to arrest under R.C. § 2935.03(A)(1). (Doc. # 27, page 18; doc. # 29, page 16.) Further, Defendant Officers assert that they had authority to arrest Clay for his disorderly conduct, in violation of R.C. § 2917.11. (Doc. # 27, page 19; doc. # 29, page 17.) Under Ohio law,

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
>
> (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;
>
> (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;
>
> ( . . . )
>
> (E)(1) Whoever violates this section is guilty of disorderly conduct. . . .
>
> (3) Disorderly conduct is a misdemeanor of the fourth degree if any of the following applies:
>
> (a) The offender persists in disorderly conduct after reasonable warning or request to desist. . . .
>
> (c) The offense is committed in the presence of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person who is engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind.

(Ohio R.C. § 2917.11.)  There is no genuine dispute of any material fact that Clay's actions

provided ample probable cause to arrest him for disorderly conduct.  All of the evidence before

the Court describes Clay's actions that day as uncooperative, belligerent, and abusive.

Defendant Freed provides an affidavit, in which he avers that after he returned to the Clay

property with the two sheriff's officers, Clay "immediately started cussing at us."  (Doc. #27-1,

Exh. F.)  He continues:

> Sergeant Gilkey then went up to Mr. Clay and advised him of his
> attitude and his persistent disorderly conduct.  As Mr. Clay
> attempted to point at me, stating again that he wanted me off his
> property, he struck Sergeant Gilkey's hand.  Sergeant Gilkey
> advised Mr. Clay that he was under arrest.  As Sergeant Gilkey
> attempted to arrest Mr. Clay, Mr. Clay spun around and began to
> retreat in a fast pace down the slight slope of yard that we were
> standing on, in order to avoid arrest.

(*Id.*)  Sergeant Gilkey offers a similar description of the events, as noted in the "Ohio Uniform

Incident Report" referenced in his motion:

> On 8-25-10 Chief Freed of the Syracuse Police Department
> radioed our dispatch and requested back up on a disorderly male . .
> . . When we started to walk up to where Mr. Clay was he looked at
> Chief Freed and started yelling obscenities and told him to get off
> his property[.]  I intervened and told him that Chief Freed had a
> valid reason for being on his property and we weren't going
> anywhere, I told him that Freed needed to speak with him and that
> he needed to calm down, he continued to yell and curse after
> warnings and I told him that he was going to be arrested, he yelled
> and cursed more and I told him to turn around and put his hands
> behind his back, he spun around and jerked away from me and
> Deputy Myers and Chief Freed attempted to put his hands behind
> his back, he became more agitated and became very combative
> swinging his arms and jerking[. . . .]

(Doc. #29-3, page 9.)

In his deposition testimony, Clay agrees that Sergeant Gilkey attempted to defuse the

situation, that he was angry at Chief Freed—admitting that he was "pretty hot"—and that he

walked away from the officers after he was told to calm down. (Clay Dep., doc. # 28-1, pages 44-46.) Notably, he never states—neither in his deposition testimony nor in his responsive brief—that he cooperated with the officers at any time. In his single response to both motions, Clay offers the barest recitation of the facts and offers unsubstantiated legal conclusions:

> . . . [A]ll individual defendants, to wit: Freed, Myers, and Gilkey, all in uniform and on duty for either the Village of Syracuse, Ohio and/or Meigs County, Ohio and acting in concert and under color of State law as officers and at the direction and authority of those entities, "arrested" plaintiff Paul Clay, utilized TASER weapons against Paul Clay, utilized "attack batons" on Clay's surgically repaired shoulder and arm, caused Clay to be compelled to the ground, handcuffed Clay behind his back, forcibly transported him to an adjoining county, confined him at that institution overnight and compelled him to formal trial proceedings. . . .
>
> Paul Clay was generally proceeding at the time in a legally permissible manner on his own property. The actions of the defendants herein clearly violated Clay's right to be free from State arrest and confinement.

(Response, pages 2-3.)

Nowhere in the record is there any evidence to refute the proposition that the Defendant Officers had probable cause to arrest Clay for disorderly conduct and resisting arrest. Chief Freed observed an open fire on Clay's property, an observation that Clay does not deny. Nor does Clay deny that he was uncooperative with and verbally abusive to Chief Freed. When Chief Freed returned to the property with Officers Gilkey and Myers, Clay continued his uncooperative and abusive behavior, despite Sergeant Gilkey's concerted efforts to defuse the situation and to calm down Clay. Nowhere does Clay aver that he cooperated with the officers in any way, at any time.

Even if Clay had alleged facts that, if true, might permit a jury to find that his constitutional rights had been violated, government officials who are performing discretionary

functions are entitled to qualified immunity. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1094 (6th Cir. 1992). "The entitlement is an immunity from suit rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is a question of law for the court, *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir. 1988), so long as the legal question does not turn upon accepting one version of the facts over another, *Sova v. City of Mount Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998). The Sixth Circuit has set for a three-part test for evaluating qualified immunity claims:

> First, we determine whether a constitutional violation has occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). In qualified immunity cases, the plaintiff must show that the defendant is not entitled to the defense—that is plaintiff's burden once the defense is asserted. *Wysong v. City of Heath*, 260 Fed. Appx. 848, 852 (6th Cir. 2008) (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991)).

In the context of a false-arrest claim, the test is not whether probable cause existed, but rather, whether an officer, in light of the information he possessed, reasonably could have believed that probable cause existed. Under § 1983, "an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) (citation omitted). Given the information possessed by the officers—including Clay's actions that they observed

just before arresting him—the officers reasonably believed they had probable cause to arrest him. Clay was defiant, abusive, and completely uncooperative. There is no evidence to the contrary. As a result, no constitutional violation occurred, and Clay alleges no fact—let alone sufficient facts—to indicate that any of the officer's actions were objectively unreasonable. Therefore, Defendants Freed, Gilkey, and Myers are entitled to qualified immunity on Clay's § 1983 false arrest and false imprisonment claims.

Although Plaintiff Clay does not pursue his claims against the Village of Syracuse or Meigs County, even if he had, his claims against those entities would be unavailing, as well. *See Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) (citations omitted) ("Where, as here, a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm."); *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 224 (6th Cir. 2004) (noting that where no constitutional violation occurred, there can be no municipal liability under § 1983).

Based on the uncontroverted facts before the Court, there was clearly probable cause for a lawful arrest of Plaintiff for disorderly conduct and resisting arrest. In addition, Defendants Freed, Gilkey, and Myers are entitled to qualified immunity on Plaintiff Clay's § 1983 false arrest and false imprisonment claims. Therefore, summary judgment is granted in favor of Defendants on Clay's § 1983 false arrest and false imprisonment claims.

Finally, Plaintiffs have also alleged state law claims, including violation of the Ohio Constitution. However, since this Court will dismiss Plaintiffs' federal claims, it declines to exercise jurisdiction over Plaintiff's state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if the federal claims supporting supplemental jurisdiction are dismissed prior to trial, the state claims should be dismissed as well); 28 U.S.C. § 1367(c);

*Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . .").

## IV. CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** the Motion for Summary Judgment of Defendants Gary Freed and the Village of Syracuse (doc. # 27) and Defendants William Gilkey, Andy Myers, Sheriff of Meigs County, and County of Meigs (doc. # 29). The Court **ORDERS** that the Complaint (doc. # 2) be hereby **DISMISSED.** The Clerk of Court is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

**/s/ Peter C. Economus**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**